## Appeal of Washington and Lee University.

Where there are two parties claiming a legacy, neither of whom bear the name of the legatee in the will, and it is uncertain which is the one intended by the testator, if either, it must be determined, by a consideration of all the language used, and by proof of all the facts and surrounding circumstances.

January 22d, 1886. Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, STERRETT, GREEN and CLARK, JJ.

APPEAL from the Orphans' Court of *Philadelphia county:* Of January Term, 1885, No. 388.

This was an appeal by the Washington and Lee University from the decree of the Orphans' Court of Philadelphia county, in the matter of the distribution of the estate of Asa Packer, deceased, upon the account of his executors. ·This decree confirmed the adjudication of the Auditing Judge, upon exceptions thereto by the appellants, awarding a legacy given by the decedent's will to Washington College, Lexington, Virginia, to the Virginia Military Institute instead of to the appellants, both of whom claimed that legacy as the intended donees.

The facts sufficiently appear from the opinion of the Auditing Judge, HANNA, P. J., and the opinion of the Court overruling the exceptions to the adjudication. The following is the opinion of the Auditing Judge.

The testator further directed the trustees to pay out of the income of the estate certain pecuniary legacies, specifically mentioned in the will.

He also, by subsequent items, bequeathed other pecuniary legacies, which are payable out of the principal of the estate included therein, being the following:—

"And to the trustees of Washington College, Lexington, Virginia, the sum of $4,000.

"And I also direct that the bond of the Washington College, Lexington, Virginia, now held by me, for $1,000, shall be surrendered and cancelled by the trustees, thus making the legacy to that college $5,000."

The only contention before the Auditing Judge arose as to the award to be made of this legacy.

On the one hand it was claimed by Mr. Dallas, on behalf of the Washington and Lee University of Lexington, Virginia, and on the other it was claimed by Mr. Gerhard, on behalf of the Virginia Military Institute of Lexington, Virginia.

It was conceded that both of said institutions are located at the town of Lexington, and that no college is there located denominated "Washington College." And it was shown that testator, in his lifetime, had purchased $1,000 of the bonds of the Virginia Military Institute, taking ten bonds of the Institute of $100 each, which he afterwards, in 1871, returned, and received from the institute two bonds, each for $500.

These were found among his assets after his death, and included in the inventory and appraisement, and produced in court; but no bond of $1,000 of "Washington College" was discovered, nor were any ever issued by the college.

The question thus arises, which of the two institutions at Lexington, Virginia, was intended by testator as the recipient of his bounty. It being evident he was mistaken as to the corporate title or name of the legatee he desired to benefit, it becomes a question of fact to be determined by evidence, and thus explain the latent ambiguity.

The legacy is not to fail because of the error, but to be carried into effect if the object of the testator can be clearly ascertained.

It will be observed that neither of the institutions are correctly mentioned; nor are the bonds, which the testator had in his possession at the date of the will, identified.

As an elementary principle, we find "that when the object of a testator's bounty, or the subject of disposition, that is, the person or thing intended, is described in terms which are applicable indifferently to more than one person or thing, evidence is admissible to prove which of the persons or things so described was intended by the testator": Wigram on Wills, 57.

In Dred Good v. Needs, 2 M. & W., 139, declarations of the testator were admitted in evidence to show what person he meant to designate by the description of "George Good, the son of Good."

Again, evidence of circumstances from which the court may

conclude what the testator's intention must have been is generally admissible: Theobald on Wills, ch. 14, p. 95.

If there is a specific gift, as for instance certain stocks, and the testator at the date of his will possessed no such stock, but other stock nearly answering the description, the latter will pass: Id., 102, and cases cited.

Evidence is also admissible of the objects the testator was likely to benefit; for instance, to which of two societies, both insufficiently answering a certain description, the testator was in the habit of subscribing: Kilvert's Trusts, 12 Eq., 183; 7 Ch., 170.

When a testator may have been in the habit of calling persons or things by peculiar names, evidence is admissible to show whom the testator thus called by the names used by him: Theobald, 208.

But if he use initials or letters, this is a patent ambiguity which cannot be explained; or if a blank be left for the name of the legatee: Id.

But where the legatee is inaccurately named or described, so that there is no one who fully answers to the name or description, the court will, if possible, gather from the contents of the will and the surrounding circumstances who was meant: Id., 29.

And one name may be substituted for another when it is manifest that the name used was not intended, but that a certain other name was necessarily meant: Corolly *v.* Pardon, 1 Paige, 291; Dent *v.* Pepys, 6 Mead., 350, cited in 10 Bacon's Abridgt., 538.

A defective designation of the legatee or devisee may always be repaired by parol proof. And where there are words of designation through a mistake of the name, the ambiguity may be removed by evidence dehors the will: Newell's Appeal, 12 Harris, 197; Duncan *v.* V. Duncan, 2 Yeates, 302; Brown *v.* Brown, 6 Watts, 54.

Where a legacy is given to one by name it may be shown that another was intended by description: Wagner's Appeal, 7 Wr., 162.

And where a legatee was described as a "nephew," it may be shown that a grandnephew was intended: Henry *v.* Verum, 10 Luzerne Reg., 105. Parol evidence is admitted to prove that a bequest to the "Refuge for Decayed Merchants" was intended for the "Merchants' Fund": Cresson's Appeal, 6 Casey, 437. See also Shields' Estate, 39 Leg. Int., 159; Appeal of Home for Blind Women, 40 Id., 242.

But such evidence is only admitted to identify the subject matter of a devise, when it is either ambiguous or uncertain under the terms of the will: Coleman *v.* Eberly, 26 Mich., 197.

And it must describe the object of the testator's bounty more exactly than the will does: Johnson's Appeal, 3 W. N. C., 52.

Parol evidence being then admissible in a case like the present in order to ascertain the object of testator's bounty, the depositions of witnesses in support of the claim of the Virginia Military Institute to the legacy were offered by Mr. Gerhard.

The same were objected to by Mr. Dallas, reserving the right also to offer depositions in support of the claim of the Washington and Lee University.

The objection was overruled, and the depositions were admitted.

Mr. Dallas then offered in evidence depositions of Bolivar Christian, Esq. This was also admitted.

From the testimony thus submitted, the Auditing Judge finds the following facts: In 1866 or 1867 testator purchased from the board of visitors or corporation of Virginia Military Institute $1,000 in bonds of $100 each, issued by said Institute, numbered 232 to 241 inclusive.

Subsequently, the Institute being unable to pay said bonds at maturity, in pursuance of an Act of Assembly of Virginia, new bonds were issued in amounts of $100 and $500 in substitution of those issued by the board of visitors in 1866. By request of the officers of the Institute, testator surrendered the bonds then held by him, and accepted in lieu thereof two new bonds of $500 each, and retained the same in his possession until his death.

The Washington and Lee University and the Virginia Military Institute are both located at Lexington, Virginia. The former is an ancient institution, having been founded more than a century ago, and during its history has been known as Liberty Hall, Washington Academy, then as Washington College, and since June, 1871, as Washington and Lee University.

In 1865 General Robert E. Lee was elected its president, and continued in office until his death—October, 1870.

On the other hand, the Virginia Military Institute was organized and incorporated in 1839—a comparatively recent date. In 1864 its buildings were destroyed by fire, and in 1866, for the purpose of raising funds with which to rebuild, it issued the bonds before mentioned.

The Washington and Lee University never issued any bonds; nor was any appeal made by any of its officers to the testator for financial assistance until some time in 1873, and to this no reply was made by him.

And at this very time testator had in his possession the two $500 bonds of the Virginia Military Institute.

But subsequently, in 1876, the agent of its board of trustees visited testator with the object of securing subscription in aid of the University, when, in reply to his request, testator informed him that he then held some bonds of the institution, and, notwithstanding the effort of the agent to correct the mistake, testator still insisted that he held some of the bonds, and did not make any subscription to the University, saying he would consider the matter.

At the date of the interview testator had already executed his will, bearing date May 14th, 1875, wherein he bequeathed this legacy now in controversy.

It also appeared that the two institutions are very frequently confounded, not only by strangers, 'but by residents of the state of Virginia, letters being addressed to the one when the other was intended, and even students applying for admission to the one when their object is to attend the other.

The testator was also not familiar with the two separate institutions, although frequent letters had been received by him from the officers of the Virginia Military Institute relative to the bonds held by him, the substitution of the new bonds for the old issue, and invitations to him to attend its celebrations.

These latter, however, he never accepted, being at that time engrossed, not only with complicated business transactions, but the foundation of that magnificent monument to his beneficence and love of learning to which he has devoted the bulk of his fortune—Lehigh University.

And it is, therefore, not surprising that he, too, confounded the Washington and Lee University, when asked to contribute towards its endowment, with the institution in the same town whose bonds he then held and had purchased ten years before, and payment of which he never intended to demand, but had already by his will, as he naturally supposed, directed to be cancelled, and in addition had bequeathed to it $4,000.

In view of all the facts proved, the Auditing Judge has reached the conclusion that the Virginia Military Institute at Lexington, Va., is the institution intended by the testator when he, through misapprehension and mistake, made use of the name Washington College.

The legacy of $4,000, with interest from one year after the death of the testator, is therefore awarded to the trustees or visitors of the Virginia Military Institute, to be paid in annuity bonds of the Lehigh Valley Railroad Company, as directed by the will.

And the executors and trustees are also directed to cancel

.the two $500 bonds of said Institute, and deliver the same to the proper officers thereof.

The collateral inheritance tax upon said legacy to be first paid by said legatee.

The following is the opinion of the court sustaining the adjudication and overruling the exceptions:

It is an established principle in the construction of wills that "for the purpose of determining the object of a testator's bounty, or the subject of disposition, or the quantity of interest intended to be given by his will, a court may inquire into every material fact relating to the person who claims to be interested under the will, and to the property which is claimed as the subject of disposition, and to the circumstances of the testator, and of his family and affairs, for the purpose of enabling the court to identify the person or thing intended by the testator, or to determine the quantity of interest he has given by his will. And this is true of every other disputed fact, respecting which it can be shown that a knowledge of extrinsic facts can in any way be made ancillary to the right interpretation of a testator's words": Wigram on Interpretation of Wills, Prop. V. "And in all cases in which a difficulty arises in applying the words of a will to the thing which is the subject-matter of the devise, or to the person of the devisee, the difficulty or ambiguity which is introduced by the admission of extrinsic evidence may be rebutted and removed by the production of further evidence upon the same subject, calculated to explain what was the estate, or subject-matter, really intended to be devised, or who was the person really intended to take under the will; and this appears . . . . . to be the extent of the maxim, '*Ambiguitas verborum latens verificatione suppletur*'": Per TINDAL, C. J., in Miller *v.* Travers, 8 Bing., 244.

In the case now before us the evidence discloses the following facts:

In 1866, Judge Packer, the testator, was called upon at his office in Mauch Chunk, by Colonel Lyell, Professor of Mathematics in the Virginia Military Institute, a school in Lexington, Va., and solicited to advance moneys to aid in re-building the college edifice which had, a year or two before, been destroyed by fire. He received his visitor very kindly, expressed an interest in the object of his mission, and regretted that the time was an inopportune one, for the reason that he was himself "trying to build a school" (Lehigh University), and upon that very day had been required to pay $50,000 towards it. But he did not refuse aid on that account. Turning to his clerk, he asked, "Can't we do something for this school?" and being told that $1,000 could be spared, he gave his

1 AMERMAN—37

check for that sum, with a tone of apology for its small-ness. In return there were given to him ten bonds of the Virginia Military Institute for $100 each.

A few days after this, General Smith, the superintendent of the school, wrote to him to express his thanks for "the kind aid extended to the institution, . . . . . the more valu-able . . . . . because it enabled them to complete part of the work, and to provide shelter for the corps of cadets before the winter set in." It was added that the aid was especially "precious because it was the only subscription . . . . . received from friends in the North." There was also a pressing invitation for a visit at the examinations in the July following.

Three years later, General Smith wrote, asking him "on behalf of the Board of Visitors and Faculty," to be present at the annual examination in July. "You will be the guest of the institution," it was said, "and your visit would afford us a fitting occasion to recognize the kindness which you have so liberally extended to us." And on the 10th of June, 1871, General Smith wrote to ask that the ten bonds for $100 each might, in pursuance of the provisions of a recent Act of the Virginia Legislature, be exchanged for two of $500 each, at the same time renewing the invitation to visit the school as the guest of the board on the 4th of July following, and say-ing further: "Your active interest in the cause of educa-tion, and particularly in the material progress which this school has cultivated, would add great gratification to our board to have you present." The invitation was not accepted, but the bonds were exchanged as requested.

In 1873, Bolivar Christian, Esq., one of the trustees of the Washington and Lee University, another institution of learn-ing in Lexington, Va., wrote to Judge Packer. This letter expressed gratification at the interest taken by the latter "in the cause of education," and asked attention to the effort that Washington College was making to increase its endowment. It referred to the interest taken by the Scotch-Irish settlers in Pennsylvania, and by General Washington, in the institution; and ended by asking him to "bear it in mind and to aid it by donation or bequest."

There was no reply to this letter, but when the will was proved, it was found to contain the following bequest, under which the present controversy arises:

"I also give and bequeath . . . . . to the trustees of Wash-ington College, Lexington, Virginia, the sum of $4,000. And I also direct that the bond of the Washington College, Lex-ington, Virginia, now held by me, for $1,000, shall be sur-

rendered and cancelled by the trustees, thus making the legacy to that college $5,000."

The will was dated May 13th, 1875, and there was a codicil, referring to its provisions, dated May 22d, 1877.

The testator held no bond of the Washington College, nor did he, so far as the evidence shows, ever hold a bond of any college at Lexington, Virginia, for $1,000. But he did hold, and continued to hold until the time of his death, the two bonds of the Virginia Military Institute amounting to $1,000, and there can be no doubt that these were the bonds referred to. He had acquired them, not as an investment, but for the purpose of aiding a school needing assistance. To a man of his large fortune, the amount given was but a trifle. The bonds were evidently not before him when the will was made; and it is not at all surprising that he should refer to them inaccurately, and, under the circumstances, even make a mistake in the name of the institution from which he had received them.

How is the difficulty to be solved?

As the case was presented at the argument our impression was that the name should govern, and that the award should have been to the Washington and Lee University, whose corporate title, until 1871, was Washington College—now its popular designation. But a more careful consideration has led us to a different conclusion, the reasons for which may be briefly stated.

It is clear that the testator intended to benefit but a single institution, and the money cannot be given to one and the bonds to another. He declares, after directing the surrender of the bonds, that there will thus be a "legacy to that college of $5,000.

It is equally clear that the bonds cannot be given to the Washington and Lee University. They can only be "surrendered" to the obligor; and their "cancellation" would prevent the gift to the Washington and Lee University, if it was intended as "that college," from being $5,000. A construction which will defeat any part of the will is not to be adopted if one is possible which will sustain it as an entirety.

It is well settled that while a mistake in the name of a legatee (except in certain very rare instances) cannot, where any one having the name was known to testator, be corrected, if the name alone is employed in the will, it is otherwise where both name and description are given, for in that case the context furnishes the means of making the correction, and whatever is found to be erroneous is simply rejected. The maxim is *falsa demonstratio non nocet*, and the falsity may be shown to be either in the name or in the description: Ryall *v.*

Hannam, 10 Beav., 536; *In re* Rickett, 11 Har., 299; Stock-dale *v.* Bushley, 19 Ves., 381; Doe *v.* Huthwaite, 3 B. & Ald., 632; Blundell *v.* Gladstone, 1 Phil., 279; s. c., 1. H. L. Cas., 778; Wagner's Appeal, 7 Wr., 102. And there is no presumption in favor of the name more than the description: Per Lord CAMPBELL, in Drake *v.* Drake, 8 H. L. Cas., 179.

The testator knew that he had befriended a struggling school in Lexington, Virginia, and that he held its bonds. Its officers regarded him as a benefactor, and had invited him to be their guest. He had expressed an interest in its welfare, and had intimated that what he had done was less than he desired to do. The name was forgotten or mistaken, but the direction to surrender and cancel the bonds could only apply to it, and the identity of the intended beneficiary was thus unmistakably indicated. The mistake as to the name was naturally accounted for by the application made to him in 1873 by the Washington and Lee University for aid by donation or bequest. He had had no previous communication with this institution, but it was in Lexington, Virginia, and he would be apt to take it for granted that it was the one which had already been the recipient of his generosity, not knowing that this small town contained two institutions of learning. "Washington" was a name which would remain in his memory, but the name was not the important feature; the college whose bonds he held was present in his mind. The case thus falls within the principle of the maxim, "*Præsentia corporis tollit errorem nominis.*" If a legacy is given "to John Smith, the tenant of my farm at A.," the tenant might take if his name should be Thomas Robinson, even if the legacy should be claimed by a John Smith, the latter never having been my tenant at all.

That the testator labored under a mistake as to the name of the college whose bonds he held is shown affirmatively by the testimony of General Lilley, who called upon him on behalf of the Washington and Lee University in 1876 (after the execution of the will), and to whom he declared, in spite of the assurances that it could not be, as none had been issued, that he "already held some of its bonds;" an impression no doubt strengthened by the singular circumstance that the gentlemen calling upon him on behalf of each institution, were, or had been officers in the Confederate service, both of whom had lost an arm, and having names so near alike (Lyell and Lilley) that he might naturally believe they were the same individual.

Upon the whole, we are of opinion that the conclusion reached by the Auditing Judge was the correct one, and the exceptions are therefore dismissed.

The legacy of $4,000, with interest from one year after the death of the testator, is therefore awarded to the trustees or

visitors of the Virginia Military Institute, to be paid in annuity bonds of the Lehigh Valley Railroad Company, as directed by the will. And the executors and trustees are also directed to cancel the two $500 bonds of said Institute, and deliver the same to the proper officers thereof.

The appellee thereupon took this writ, assigning for error, *inter alia*, the entering of the decree in this case.

*Dallas* (*Crawford* with him), for appellant.—The only bequest is to "Washington College." The only inquiry, therefore, is as to the identity of the object so designated. The designation is scarcely inaccurate. It is not at all equivocal. It is inaccurate only because the corporate name of Washington College happens to have been changed. It is not equivocal, because there are not two persons to each of whom that designation, or any part of it, may, with equal aptness, be applied.

1st. An equivocation arises only "if there are several persons who accurately answer the whole description," or "if part of the description applies equally to two persons, and the rest of it applies to no one:" Theobald on Wills, 210; 1 Jarman on Wills, 372, 374; Hawkins on Wills (Sword's ed.), 8 *et seq.*; Johnson's Appeal, 3 W. N. C., 52. Evidence cannot be received to support the claim of a person, in opposition to that of another exactly, or more nearly, answering to all the particulars in the description:" 1 Jarman on Wills, 372; Theobald on Wills, 207; Appel *v.* Byers, 38 Leg. Int., 479; and Appeal of Home for Blind Women, 40 Id., 242.

"If the person to take be not in some sort described in the devise, evidence will not be admitted to show who was intended, . . . . . but where there are words of designation, though a mistake of the name, the ambiguity may be removed by evidence *dehors* the will." This is peculiarly applicable to bequests to corporations: Newell's Appeal, 12 Harris, 199. The Institute cannot take, and we must adopt that description which will give the will effect: Coleman *v.* Eberly, 26 P. F. S., 203.

If an accurate name is used, evidence is not admissible to ascertain the person to take, if there is a person to whom it correctly applies: Theobald on Wills, 207; Westlake *v.* Westlake, 4 Barn. & Ald., 55 (6 Eng. C. L. Rep.. 388). "In no instance has a total blank for the name been filled up by parol evidence :" 1 Jarman on Wills, 375; but in the present case, the Military Institute asks even more—that its name shall be written over an erasure (now to be made) of the name "Washington College," as it occurs in two places. "Parol evidence is not admissible against the expressed effect :" Hurst *v.* Beach,

5 Mad., 221, and Best *v.* Hammond, 5 P. F. S., 413; Shelly *v.* Bryer, 1 Jac., 207 (4 Eng. Ch. Rep., 208). A new devisee cannot be imported into the will by evidence : Miller *v.* Traverse, 8 Bing., 239 (21 Eng. Com. Law Rep., 292) ; Good *v.* Needs, 2 Mees. & Wels., 137; Wusthoff *v.* Dracourt, 3 Watts, 243; Brown *v.* Brown, 6 Id., 54.

*Second.*—In view of what has been said, it is now submitted that the only real question for evidence, or for consideration, has respect solely to the inaccuracy of the designation of the object of testator's bounty, and is as to the identification of the Washington and Lee University as that object.

It is submitted that Washington and Lee University has been identified as Washington College, by the evidence which has established :—

1st. That it is the same legal entity—the same corporation —whose corporate name was for a long time, and until quite a recent date, "Washington College;" there not being, and never having been, any other corporation of the same, or even of a similar name : The Hospital *v.* Knight, 21 Law J. Rep. (N. S.), Chanc., 537—S. C. 11 Eng. L. & E. Rep., 191; Roy *v.* Rowzie, 25 Grattan, 599; Kilvert's Trusts, Law Rep., 7 Ch. App., page 170.

2d. That "Washington College" is a sufficiently descriptive and distinguishing designation, even at this time, of the corporation whose exact corporate title is now Washington and Lee University; and does not at all designate, distinguish, or describe any other person or corporation whatsoever.

A bequest to "the trustees or those who hold the funds of the Theological Seminary at Princeton," was awarded to the "Trustees of the Theological Seminary of the Presbyterian Church:" Newell's App., 12 Har., 198. Similar to the last case cited, are Missionary Society's App., 6 Cas., 425, and Cresson's App., Id., 437.

The ultimate facts in this case being proven indisputably, the whole question is unprejudiced by the finding of the court below, as an inferred fact from the evidence, and is entirely open to the judgment of the appellate tribunal. The inferences or deductions of the court below are always subject to review : Bickley's App., 2 Brewster, 231, Patterson's App., 8 Out., 371; Shield's Est., 40 Leg. Int., 242; U. S. *v.* Pugh, 9 Otto, 269.

*John S. Gerhard* for appellee.—A construction which will defeat any part of the will is not to be adopted if one is possible which will sustain it entirely : 1 Redfield on Wills, 431; Butz *v.* Butz, 2 Pen'y., 273; Schott's Estate, 28 P. F. S., 42.

For the purpose of determining the object of a testator's

bounty, or the subject of disposition, or the quantity of interest intended to be given by his will, a court may inquire into every material fact relating to the person who claims to be interested under the will: 1 Redfield on Wills, 503; Newell's Appeal, 12 H., 197; Best *v.* Hammond, 5 P. F. S., 409.

One name may be substituted for another when it is manifest that the name used was not intended, but that a certain other name was necessarily meant: Corolly *v.* Pardon, 1 Paige, 291; Dent *v.* Pepys, 6 Mead, 350, cited in 10 Bacon's Abridgt., 538.

A defective designation of the legatee or devisee may always be repaired by parol proof. And where there are words of designation through a mistake of the name, the ambiguity may be removed by evidence dehors the will: Newell's Appeal, 12 Harris, 197; Duncan *v.* V. Duncan, 2 Yeates, 302; Brown *v.* Brown, 6 Watts, 54.

Where a legacy is given to one by name, it may be shown that another was intended by description: Wagner's Appeal, 7 Wright, 102.

It seems scarcely necessary to dwell further upon the facts of the case, as nothing is better settled than that the report of an Auditor upon the question of fact, when confirmed by the court, is final and conclusive, unless there be flagrant error: Miller's Appeal, 6 Casey, 478; Miller's Appeal, 39 Legal Intelligencer, 479.

And the finding of an Auditing Judge is entitled to equal weight: McConnell's Appeal, 1 Out., 31.

The opinion of the court was filed February 1st, 1886.

PER CURIAM. This legacy in contention was not given to either the appellant or the appellee by its correct name. Which one of them is the more likely to have been intended by the testator as the object of his bounty, must be determined by a consideration of all the language used.

It cannot be questioned that he intended to give the four thousand dollars in cash to that institution which was indebted to him in the sum of one thousand dollars. He directs the bond for $1,000 to be "surrendered and cancelled by his trustees, thus making the legacy to that college five thousand dollars." In fact he held two bonds of $500 each, instead of one for $1,000, against the appellee. He held none against the appellant. It would be a forced construction of the language to divide the legacy, when the whole $5,000 was given to one institution. It was impossible to surrender and cancel a bond against the appellant, as none such existed. We therefore think the decree is right.

> Decree affirmed and appeal dismissed at the costs of the appellant.