## In re United Presbyterian Women's Association of North America

C.P. of Allegheny County, no. 4586 of 1995.

*John F. Meck, Michael Yukevich* and *Albert J. Zangrilli,* for United Presbyterian Women's Associaiton.
*Edmund W. Ridall Jr.,* for Life Care resident Mabel L. Smith.
*Richard R. Tarantine* and *Penina Kessler Lieber,* for Board of Managers of Mars Home.
*Mark A. Pacella, deputy attorney general,* for Commonwealth.
*Christine Mullen,* for Commonwealth Insurance Department.
*Alexander J. Jaffurs,* for Life Care resident Edith Chapman.
*Charles M. Grimstad,* for Life Care resident C. Marguerite Grimstad.
*Andrew E. Thurman,* for Forbes Health System.

WEKSELMAN, *J.,* February 1, 1996—The United Presbyterian Women's Association of North America has filed a petition for approval of the creation of Woodwell Life Care Trust and plan of division of nonprofit charitable corporation. By its petition, the Association seeks to create a life care trust and transfer to it certain assets which are allocated to accounts for various activities of the Association. The petition is opposed by

the Attorney General of Pennsylvania and by the Mars Home for Youth. As the result of pretrial activities, it was concluded by all concerned that a threshold question of the propriety of the reallocation of certain funds from one activity to another existed, and that the court would undertake to determine that question, thereby possibly expediting the eventual determination of the matter. The court invited the parties to submit a stipulation, and one was submitted, although it was disappointing in its brevity. The stipulation is as follows: "The papers attached to this stipulation represent true and correct copies of various testamentary and *inter vivos* documents discovered by the parties. These documents contain the language at issue for purposes of the briefs filed by the parties. . . ." (emphasis in original) Despite the brevity of the stipulation, a reading of the petition provides much information necessary for the decision of the threshold question.

The petition provides, inter alia, as follows:

"(6) The Association was incorporated in 1879 under the name 'The Orphans' Home of the United Presbyterian Church of North America,' pursuant to the predecessor to the Nonprofit Corporation Law of 1988. Originally, the Association's corporate and charitable purpose was to care for orphans. Over the years, the Association's purpose as it relates to youth first evolved to include foster-type care for older children. In recent years, the Association's youth activities have focused on the care of emotionally troubled and abused youth. The Association's youth activities are conducted under the fictitious name *The Mars Home for Youth* in facilities located in Butler County, Pennsylvania. This is *not* a separate corporate entity, but this institutional activity

over the years on behalf of orphans and youths is referred to in this petition as the 'Home for Youth.'

"(7) In 1892, the Association acquired a piece of real estate and began operating what is now known as The Woodwell, a 118-bed nursing facility located in Wilkinsburg, Pennsylvania. The Association's elder care activities (nursing care—29 beds, personal care—44 beds and independent living—45 beds) are conducted under the fictitious name *The Woodwell*. This is *not* a separate corporate entity, but this institutional activity over the years on behalf of the elderly is referred to in this petition as the 'Home for the Aged.'

"*Sources of funding and restrictions in trusts.*

"(8) All activities of the Association are funded through a combination of:

"(a) Annual gifts and donations;

"(b) Payments for services from both the Commonwealth of Pennsylvania, county governments and the federal government;

"(c) Payments from residents of the Home for the Aged;

"(d) An undetermined number of testamentary and inter vivos gifts (most of which have been paid over to the Association, but 11 of which are still held and managed by third party trustees).

"(9) Historically, the Association has used a method of accounting, allocating certain assets separately to the Association, the Home for the Aged and the Home for Youth. The assets allocated to each of the three are accounted for separately, as is the income generated from each of the separate funds.

"(10) Many of the wills and trust agreements which created these various gifts have language which purports to restrict the uses for the gifts—*e.g.,* for use only with the Home for Youth or only with the Home for the Aged. In general, the Association's fund accounting practice has reflected the restrictive language which appears in the controlling documents by allocating such gifts to the separate funds based on that language." (emphasis in original)

It becomes critical, therefore, to examine the documents attached to the stipulation to determine whether the relief sought by the Association may be granted.

The Association, the Mars Home and the attorney general, strangely enough, have all, in general, cited the same authorities. It is the conclusions to be reached from the cited authorities which are hotly disputed. It is the basic position of the Association that gifts made by various testamentary or inter vivos documents to the Mars Home are of such nature as to be unrestricted gifts to the Association, which it is free to use for any of its charitable purposes. The Mars Home and the attorney general, on the other hand, take the position that, in the case of each gift, the purpose of the donor or testator is clear, and that the gift was made solely for the benefit of the Mars Home, and that the reallocation suggested by the Association is improper.

This court need not and will not discuss each of the gifts individually, but will rather discuss some of them to indicate what this court considers to be the fallacy of the Association's position.

A clear example of a gift which this court concludes was made for the benefit of the Mars Home, and may not be diverted, exists in the case of what appears in the addendum to the stipulation as the Bartley deed

of trust. Paragraph Third of the deed of trust provides that:

"Upon the death of the survivor of the donors, the trustees [Philip M. Weber, Anne H. Ryman and the United Presbyterian Women's Association of North America] shall grant, pay or distribute the Trust Property to the United Presbyterian Women's Association of North America, who shall devote the same, both principal and income, to further the general purposes of the Home for Children at Mars, Pennsylvania, and if the said Home for Children shall not be in existence at the time of such distribution, the Association shall devote both principal and income for the charitable purposes of such home or homes or other charitable organizations as shall then be under the auspices of the said Association. . . ."

There can be no question that the donors intended to benefit the Home for Children, and not the Association generally.

Another example is the Amsler will. That will provides, inter alia, as follows:

"Fourth: I give and bequeath:

"(F). $50,000 to the United Presbyterian Women's Association of North America, a Pennsylvania corporation. It is my special desire, but I do not direct, that the said sum be used to establish a fund for the purpose of paying the annual income therefrom to or for the benefit of worthy young men and young women who are or have been residents of the United Presbyterian Home for Children, located near Mars, Pennsylvania, and who may be selected by said Legatee to attend such college or university located in the Commonwealth of Pennsylvania as may be chosen by the applicant and approved by the said Legatee. It is my wish that young men and young women so receiving aid for

their education from the income of this Fund shall repay the same to the Fund, but I do not desire that they be required to sign any written contract to that effect.

"Sixth: All of the rest, residue and remainder of my estate, real, personal and mixed, wheresoever situate, I give bequeath and devise to the United Presbyterian Women's Association of North America for the benefit of the United Presbyterian Home for Children, located near Mars, Pennsylvania, the same to be used in any manner proper for the benefit of the Home or the children thereof. If the said Home for Children is not operational at the time of my death, then I give, bequeath and devise my said residuary estate to the United Presbyterian Women's Association of North America, for a similar use, if possible, otherwise for the Association's general purpose."

There is no doubt that the language of paragraph Fourth (F) is wholly precatory, and, standing alone, probably would not support the imposition of trust duties upon the Association favoring worthy young men and young women. However, where the recipient of the gift, as in this case, upon receiving it, applies it pursuant to the bequest, the gift becomes complete and makes the precatory language binding upon the donee. *Jacobs Estate,* 62 D.&C.2d 167 (O.C. Phila. 1973); *Hunter's Estate,* 2 D.&C. 627 (O.C. Phila. 1923). See also, *Valley Forge Historical Society v. Washington Memorial Chapel,* 493 Pa. 491, 426 A.2d 1123 (1981); *Valley Forge Historical Society v. Washington Memorial Chapel,* 330 Pa. Super. 494, 479 A.2d 1011 (1984). With respect to paragraph Sixth, which disposes of the residue, there can be no question that the gift was made for the benefit of the Mars Home, and, since the Mars Home is still operational, the contingent gift to the Association does not come into effect. It should be

noted that, even if the contingent gift had come into effect, there would have been a requirement of a similar use before the general purposes of the Association could be considered.

Nor is the court convinced by the Association's argument that the gifts did not specify verbatim the registered fictitious name for the Mars Home. The gifts were made using various names, but, in each instance, it is clear that the Mars Home is the intended beneficiary. *Lockwood's Estate,* 344 Pa. 293, 296, 25 A.2d 168 (1942), cites, with approval, 3 Page on Wills p. 188, as follows:

"Misnomer is especially frequent in devises to a corporation; usually to a charitable corporation. The real names of such corporations are often never used and never known by people generally; and many testators do not feel the need, in preparing a will, of getting the real name of the proposed beneficiary. . . . Where a corporation is given an erroneous name in a will such a mistake will not avoid the gift if it is possible by means of the name used, or by admissible extrinsic evidence, to identify the corporation intended as beneficiary with sufficient certainty."

All that is required is that the designation unambiguously identify a subject to which the terms of the trust are obviously applicable. As aptly stated in the brief of the attorney general:

"[The Association] can hardly argue that these general or specific references to the Mars Home are clear enough to identify [the Association] as the intended charitable organization, but too ambiguous to conclude that the donors had any particular subject or purpose in mind."

Moreover, the Nonprofit Corporation Law and the Probate, Estates and Fiduciaries Code prohibit using donations received for the benefit of the Mars Home

to fund the Woodwell Life Care Trust. Section 5547 of the Nonprofit Corporation Law, 15 Pa.C.S. §5547, prohibits the diversion of the property from the purposes to which it has been committed, so long as that purpose remains possible. The Mars Home and its programs continue to be definite, possible and practical, and no basis exists for diverting funds intended for the use of the Mars Home to any other purpose.

The court would be remiss if it failed to note the fact that the brief filed on behalf of the Mars Home is quite intemperate in its language. It accuses the Association of deliberately attempting to mislead the court and of deliberately misstating the facts and the law. The court does not view the arguments of the Association in that light. Although the court does not agree with the position taken by the Association, its overall effect to assure the continuation as best it can of all of its charitable endeavors is laudable and commendable. As the court views the situation, however, the method chosen to accomplish those purposes cannot be put into effect.

The summary of argument contained in the attorney general's brief does indeed sum up this court's view of the controversy. The attorney general's summary states as follows:

"A donor's intent controls in determining whether a gift is restricted to a particular purpose or class of beneficiaries. No specific language is required to impose equitable duties upon a charitable corporation to use a gift received in accord with the restrictions or purpose intended by a donor. The only requirement is that a donor's intent be sufficiently clear to identify the purpose for which the gift was made.

"The documents in this case clearly establish the donors' intentions to benefit children through the Mars

Home, and as such, constitute charitable trusts for that purpose. Hence, none of the donors' gifts merged into [the Association's] general fund or assets, and remain under the equitable jurisdiction of this court.

"So long as the charitable purpose to which property has been committed remains definite, possible and practical, the legislature has made it impossible to alter or void that purpose. The Mars Home is a viable program of [the Association] and therefore the relief requested cannot be granted. Even if such grounds did exist, the purposes of the Woodwell Life Care Trust are too remote from the donors' intentions to benefit children to support the relief requested.

"Lastly, the financial difficulties occasioning [the Association's] relief requests do not support or justify creating or funding the Woodwell Life Care Trust with assets gifted (sic) to the Mars Home, since those assets are beyond the reach of [the Association's] potential life care creditors."

With respect to every gift under consideration, it is the conclusion of the court that the gift was made specifically for the benefit of the Mars Home, and that it would be improper to permit those funds to be used for any other purpose. Having so concluded, there is nothing to be gained by further consideration of the matter, and the petition must be dismissed.

### ORDER

And now, February 1, 1996, after argument and due consideration, the petition for approval of the creation of Woodwell Life Care Trust and plan of division of nonprofit charitable corporation filed on behalf of the United Presbyterian Women's Association of North America is dismissed.