# Brendlinger *versus* Brendlinger.

In a devise of land to be sold, where the testator described it, as "tracts of land," "both tracts," and "the one where I live and the other where Charles lives," separate wood lots lying two miles distant, but which had been used for supplying the farms respectively with wood, will not pass under the devise.

Two distinct and unconnected pieces of land, though owned and used by the same person, one as plough and the other as wood land, can only be regarded as one farm and pass under words in a will describing it as such in accommodation to other words of description in such instrument, which require that construction to satisfy their import.

That the wood lots are convenient and important for the use of the farms is immaterial, where the expressed intention on the face of the will does not embrace them.

A part of a tract of land which has been severed by the sale of an intervening portion, but over which a road has been reserved, may be regarded as one tract, joined together by the right of way.

ERROR to the Common Pleas of *Montgomery county.*

These cases were ejectments, brought by Wilhelmina Brendlinger against Charles Brendlinger, to recover the one-third of one-seventh of two lots of woodland, containing about 10 acres each, and against Jacob Feather, to recover the same interest in another tract of the same quantity. The plaintiff showed that the title was vested in Jacob Brendlinger, who died seised of the same, leaving five children and the issue of two children deceased, and that she was one of the three children of a deceased son.

The defendants claimed through a sale by the executors under the will of Jacob Brendlinger, dated 19th August, 1845, which contained the following clause: "My personal as well as my real property (both tracts of land) are to be sold publicly, and the real property subject to the dower above mentioned for my wife Mary, whensoever three of my yet living children think proper, and the income shall be equally divided amongst my five yet living children." In another part of the will he says, "The third part of the purchase-money is to remain in both tracts of land (the one whereon I at present, as well as the other where my son Charles lives), for her dower as long as she lives, at 5 per cent."

Charles was then living on a tract of land in Douglas township, and using it as a farm, and about two miles distant, in the same township, was a wood lot of the testator, of ten acres, from which Charles was accustomed to get wood for his farm. The testator lived on a tract in New Hanover township, and used it as a farm, and had two other wood lots in that township of near ten acres each, and which he used to get wood from, one of them being two miles and the other three miles distant from his farm. About 20 or 30 rods from Charles's farm or tract was another wood lot of

26   131
142   76
26   131
147  387

26   131
185  404

26      131
202    ²394

26   131
222   281

about the same size as the other lots, which Charles used as a wood lot, in connexion with his farm, and perhaps for pasturing cattle. This lot had formerly been connected with Charles's tract, but the testator had disconnected it by selling off an intervening portion, reserving, however, unto himself, his heirs and assigns, "the privilege and use of a road where the same now passes through said lot, to pass and repass with a team for ever." This was the connexion between the tract and the wood lot in 1845, when the will was written.

The question raised was whether, under the will, the executors could convey these wood lots, under the authority given to sell the farms.

The court below (SMYSER, P. J.) decided, that if the jury should find that these wood lots had. been used with the farms, and were necessary to them respectively; that for a long time before the date of the will, each farm and the wood lots in the same township had formed one plantation, and were blended together in use and enjoyment; and that the testator so regarded them in his will, then those lots would pass to the purchasers under the sales made by the executors. The jury found for the defendants, and these instructions were assigned for error.

*McMiller* and *Rich,* for plaintiffs in error.

*Krause* and *Boyd,* for defendants in error.

The opinion of the court was delivered by

LOWRIE, J., (who, after stating the facts, proceeded.)—We are unable to adopt the principles on which this cause was decided by the learned judge of the Common Pleas. On the death of a proprietor of land, his title must go according to the law of descents, unless he leave a will in writing directing otherwise. He who does not claim by descent, must show a written title to himself. No intention in his favour can avail him that is not expressed in the written will. If the expressed intention is inadequate for his purpose, the law of the land and the title of the heirs must prevail, and all doubts about its adequacy must operate to his prejudice.

Has the testator expressed his intentions relative to the wood lots? An intention may be so written that we need aid in understanding it. In the application of a devise the court always needs assistance, either by evidence, or by the admissions of the parties, in ascertaining the persons and things intended. Sometimes special difficulties present themselves in the endeavour to make the application. Thus the proper name of the devisee may be given, and there may be several of that name. Here· the name indicates a definite intent in the mind of the testator; and it becomes indefinite

to us only because several persons of that name are presented to our minds; a matter not thought of by him; and we must look to the relations existing between him and them, in order to say which of them he meant. Or the devisee may be defined by descriptive common names; as nephew, brother, sister, or children of a brother named; and we need evidence to show who answers to the description.

So the object devised may be described by a proper name; as "my Alaquippa place," and then we must inquire, what land was usually known by that name, or even how the testator himself had been accustomed to apply it. The intent is written, but the terms are special, and we need to have them translated. Or the object may be described by its relation to other places or its locality; as "my messuages with the appurtenances on Ludgate Hill," and then, though devised as freehold property, the circumstances of there being several adjoining lots thrown into one and occupied by one house, may show that all the lots are included in the description, though one of them may be leasehold: 1 *Mylne & K.* 571. But if it be described by its locality, as "my estate of Ashton," it will not include several distinct tracts not situate at Ashton, though the testator was accustomed to name them all as his "Ashton estate;" because there is a definite object of the devise fully satisfying the local description, and corresponding to "what he would naturally call his Ashton estate:" 3 *Taunt.* 147.

Here the testator has not named the objects of the devise, but described them "tracts of land," "both tracts," "the one where I live and the other where Charles lives," and these expressions seem to be fully satisfied by the farms thus occupied, excluding the wood lots; they are forms of description which we would naturally expect to be used relative to the farms, and just as naturally we would expect the wood lots to be separately described if he had them in his mind and was intending to dispose of them. He might have added other words of description to the word tract, that would have required its extension to the wood lots; but here the additional words rather confirm the restriction, for the father and son did not live on the wood lots, but some miles from them.

It is objected however that the wood lots are necessary to the farms respectively, and that each farm and its wood lots actually formed but one plantation; but this is plainly a misuse of terms. Two adjoining tracts may become one by a union of their titles in the same owner and a blending of their enjoyment; but two tracts, at a distance from each other, must, in the nature of things, continue to be two, no matter how they are owned and used; and we can treat them as one only by allowing a misapplication of terms in accommodation to other words of description that require to be satisfied. Here there are none such.

[Brendlinger *v.* Brendlinger.]

And the vicious ambiguity of the word necessary is here fully exposed. It means no more than that the wood lots would be of importance to the farms. We can readily understand that wood is necessary to a farm, and it may be very convenient to have a lot to get it from; but certainly the lot is not essential to its enjoyment, for wood may be got elsewhere. Especially no particular wood lot is necessary, and many farms have none at all.

The farm in New Hanover township contains 63 acres, and has 8 or 10 acres of woodland on it, and yet the testator was in the habit of getting wood from the two wood lots in that township. The executors sold one of these wood lots with that farm, so that they did not think the other necessary to it. But if we do not take the judgment of the testator, who by his silence seems not to have thought them necessary, then we must take the judgment of the jury. Will they think near 30 acres of woodland necessary for a farm of less than 60 acres of cleared land? If they do not, then they have no possible means of deciding which particular wood lot is necessary; and they merely make a will in attaching either or both of them to the farm. The disproportion of wood and plough land is not so great in the other case, but the principle is the same. The testator gives a tract of land; the jury think it needs a wood lot, and therefore they add one to it which the testator happened to own, some two miles off, though he had expressed no intention of giving it.

The foregoing remarks refer to only three of the wood lots. The fourth was once, as we understand it, a part of the Douglass township tract, though acquired by a different title. If before it was cut off by the sale of an intermediate piece, this wood lot had been used as part of the farm, and was the property of the same owner, it would very properly be called one tract; for the union of the title of adjoining tracts and blending of their use wipes out the old division lines. On the sale of the intervening portion, a road was reserved, which we understand to be for the use of the vendor and his heirs and assigns, tenants of the farm on which Charles lived: 7 *Car. & Payne* 761; 5 *Pick.* 163. It was therefore an appurtenance of that farm, and constituted a material bond between it and the wood lot. It kept up the connexion which would otherwise have been broken by that sale, and if, after that and up to the date of the will, the wood lot continued to be used as part of the farm, then it might very well be regarded as still part of the tract.

Looking both to the admission of evidence and to the charges on which these verdicts are founded, we think there was error and the judgments must be reversed.

Judgments reversed and new trials awarded.