# Metzger's Estate.

*Will—Construction—Latent ambiguity—Evidence dehors the will.*

A latent ambiguity can only be developed by extrinsic and collateral circumstances, and it is always competent to show that such ambiguity exists. But a discrepancy, or an accordance, between the whole or particular parts of the description, may be shown by evidence dehors to create, or to destroy an ambiguity which is said to be latent, because it is concealed by the will, and disclosed but by extrinsic circumstances. When such latent ambiguity has once been made dehors the will, then the way is open for parol testimony to whatever extent may be necessary to remove it.

*Will—Construction—Devise—Description.*

Where a devise contains a plain and certain description of the thing devised, and this is followed by a reference to occupancy as an added description, such reference is to be regarded as a defective description, if it indicates less than what is embraced in the prior plain certain description.

Where a description is made up of more than one part, and one part is true, but the other false, if the part which is true described the subject with sufficient legal certainty, the untrue part will be rejected.

Where a testator owns two numbered lots, the dimensions of which were known when testator acquired them, and the testator in devising one of the lots to his sister describes it by number, and further states that the lot is the lot "now occupied by my nephew, and the land attached thereto," and there is no extrinsic evidence in the case to show that another lot had been carved from the original lot, or that the nephew was in possession of less than the original lot, the devise to the sister will be construed as including the original dimensions of this lot.

*Res judicata—Title to land—Rents from land.*

A decree of the orphans' court determining the ownership of a fund made up of rents from land in dispute, is not res judicata as to the title of the land itself.

Argued May 19, 1908. Appeal, No. 160, Jan. T., 1908, by

Charles F. Smith, from decree of O. C. Lancaster Co., Sept. T., 1904, No. 64, refusing partition in estate of Charles W. Metzger, deceased. Before MITCHELL, C. J., FELL, BROWN, MESTREZAT, POTTER, ELKIN and STEWART, JJ. Affirmed.

Petition for partition.

SMITH, P. J., found the facts to be as follows:

Charles F. Smith and Levi B. Smith, sons of Louisa Smith, who was of the residuary devisees and who died before Charles W. Metzger, the testator, have petitioned for an inquest in partition of real estate of which he died seized, and which is described in the petition as follows:

"The real estate devised as aforesaid consists of a lot of land situated on the west side of South Christian street, Lancaster City, County aforesaid, between East Vine and German streets, and contains forty-seven feet along said South Christian street, extending of that width in depth, in a westwardly direction sixty feet, more or less, to certain fence lines, upon which are erected a two-story brick building, used as a bakery, with frame shed attached thereto, bounded on the north by property formerly belonging to the Order of Odd Fellows, on the east by said South Christian street, on the south by property of Charles Buckius, and on the west by other property formerly belonging to the estate of Charles W. Metzger, deceased."

The petitioners claim title under the following paragraph of the decedent's will:

"The residue and remainder of my estate, real, personal, and mixed, I give, devise, and bequeath to my brother, Gotlieb F. Metzger, my sister Mary E. Metzger, my sister Caroline Rogers, my sister Louisa Smith, and my niece Clara Rogers in equal shares and parts, if they are living at the time of the death of my said wife, and if any of them are deceased at the time of the death of my wife, then to the issue and descendants of such as are deceased leaving issue; and in the event of the death of any of them during my lifetime, or the lifetime of my wife, leaving no issue or descendants living at the time of the death of my wife, I direct the share to such one so given and devised shall be divided among the surviving legatees and devisees, and the

issue and descendants of such as are deceased leaving issue and descendants living at the time aforesaid, the issue and descendants of any deceased legatee or devisee shall take the share or portion which their parent or ancestor would have taken if living at the time of the death of my wife."

To the citation an answer has been filed by Clara Rogers, denying any title in petitioners and averring title in Mary E. Metzger and herself as the sole and specific devisees of this "lot of land" under the following codicil to the will:

"Codicil to my last will and testament above written and dated April 14, 1897.—I revoke the bequest of one thousand dollars to my sister Mary E. Metzger as therein mentioned, I give, devise, and bequeath to my sister, Mary E. Metzger, and my niece, Clara Rogers, and their heirs in fee the dwelling house and lot of land No. 135 South Queen street and now occupied by my nephew John Metzger, and the land attached thereto, after the death of my wife."

The testator devised also as follows:

"I give, devise, and bequeath my home, being my dwelling house and lot of land attached thereto, No. 133 South Queen street, Lancaster, Pa., to my sister Mary E. Metzger, together with all the contents thereof, during her lifetime, as a home for herself and my niece Clara Rogers, and after the death of my sister Mary, if my niece Clara Rogers survives both my wife and my sister Mary, I give, devise, and bequeath the said premises to her and her heirs absolutely."

Nothing else is before us. Not even is the whole will incorporated in either the petition or the answer, nor is it attached to either. Reference is made in the petition to the place of its record, and we understand it is to be considered as of the petition.

The cardinal streets of the city of Lancaster, and many parallel to them, are nearly aligned with the cardinal points of the compass. The divisions, or blocks, formed by the intersecting streets are practically rectangular and uniform in size. The lots fronting on the streets are distinguished by numbers affixed to the houses erected thereon. These lots originally did, and generally do, extend to alleys. Their depth is about 245

feet. When not qualified, a reference to one of these lots by number and streets conveys distinctly the information that it is a lot fronting on that street and extending in depth 245 feet to an alley. All of this is notorious in this community. South Queen street is one of the four cardinal streets of the city of Lancaster. In saying that he devises "No. 133 South Queen street" and "No. 135 South Queen street," the testator in clear, concise language expresses an intention easily understood. He as certainly says that he gives the lots fronting on South Queen street and extending in depth to Christian alley as if he had described them by metes and bounds. If he had said nothing more, there would have been no chance for a dispute. Having thus tersely expressed his intentions, he then made the very common mistake of attempting to make certainty doubly sure. "I give devise and bequeath to my sister Mary E. Metzger and my niece Clara Rogers and their heirs in fee the dwelling house and lot of land No. 135 South Queen street," was sufficient. But he added the words, "and now occupied by my nephew John Metzger, and the land attached thereto." Two descriptions of the same property were unnecessary. Either would have answered. Eliminate the first—the "No. 135 South Queen street"—and we have a devise to his sister, Mary E. Metzger, and his niece, Clara Rogers, of "the dwelling house and lot of land . . . . now occupied by my nephew John Metzger, and the land attached thereto." From this it necessarily follows that the testator intended to give to his sister and niece more than the lot occupied by John Metzger. He adds the land attached to this lot. It is a legitimate inference that John Metzger did not occupy the whole of "No. 135 South Queen street," and the conclusion is irresistible that the testator devised to Mary E. Metzger and Clara Rogers no less than "No. 135 South Queen street." If it had been his intention to give them only "the dwelling house and lot . . . . now occupied by my nephew John Metzger," what was his purpose in. adding "and the land attached thereto?" It was to give the land attached to the John Metzger lot with the John Metzger lot. This line of reasoning will also apply to the devise of No. 133 South Queen street.

The petitioners asked to have partitioned "sixty feet more or less" of the rear ends of No. 133 South Queen street and No. 135 South Queen street. This is admitted and such is the property described in the petition. As this "lot of land" has been devised to Mary E. Metzger and Clara Rogers, it is no part of the residue of the testator's estate, and, therefore, the petitioners have no standing and their prayer must be denied. There is nothing in the will to show that the testator did not intend to specifically devise "No. 133 South Queen street" and "No. 135 South Queen street," and there is nothing in it to raise a doubt as to his intention. With the petition and answer, we have only the will before us.

The court below dismissed the petition.

*Error assigned* was decree dismissing the petition.

*B. F. Davis*, for appellants, cited: Bruner v. Finley, 217 Pa. 127; Smith v. Metzger, 32 Pa. Superior Ct. 596; Myers v. Myers, 16 Pa. Superior Ct. 511.

*John E. Snyder*, for appellee.

OPINION BY MR. JUSTICE STEWART, October 5, 1908:

The question here was whether a piece of ground with respect to which partition was asked in the orphans' court, had passed to the petitioners—here the appellants—as residuary devisees under the will of Charles W. Metzger, deceased; or, whether it is included within the testamentary description of two adjoining lots which by the same will were specifically devised to the appellee and another. If the disputed ground is embraced within the specific devise, then, the petitioners being without interest, were without standing, and the proceedings in partition were properly dismissed. Since it was a question of identifying the thing specifically devised, the case was one which properly called for parol evidence to enlighten the court with respect to matters of which, when made known to it, it would take judicial cognizance so far as not to require special proof that the testator did, in point of fact, dictate his will with reference thereto. But it was submitted on bill and answer, without a particle of evidence extrinsic to the will. This was

because of a mistaken view entertained that, since there was no apparent ambiguity in the testamentary description of the ground specifically devised, parol evidence was inadmissible. The learned judge in the opinion filed gives us clearly to understand that this was the view taken by the court; and the fact that there was no evidence offered can be explained only on the ground that counsel were of the same mind. It is made apparent, not by anything in the record, but by the argument made before us, and the opinion filed, that the contentions of the petitioners were, that even conceding for argument's sake, that the primary meaning of the words employed in the will to describe the ground specifically devised would include the disputed ground, any attempt to fit the description in the will, according to such primary meaning, to the property devised, would necessarily encounter a want of correspondence because of changed physical conditions existing when the will became operative. In other words, their contention was that there was a latent ambiguity in the testamentary description of the ground devised. A latent ambiguity can only be developed by extrinsic and collateral circumstances, and it is always competent to show that such ambiguity exists. "But a discrepancy, or an accordance, between the whole or particular parts of the description, may be shown by evidence dehors to create, or to destroy an ambiguity which is said to be latent, because it is concealed by the will, and disclosed but by extrinsic circumstances:" Vernor v. Henry, 3 Watts, 385. "When such latent ambiguity has once been made dehors the will, then the way is open for parol testimony to whatever extent may be necessary to remove it:" Brownfield v. Brownfield, 12 Pa. 136; Brendlinger v. Brendlinger, 26 Pa. 131. While the view taken by the court with respect to this matter was a mistaken one, it is not made a subject of exception, and is not brought to us for review by any assignment. The effect of it was to limit the inquiry to the terms of the will itself; the court having nothing else before it. The learned judge of the orphans' court somehow, certainly not from the pleadings in the case nor yet from the will, but with the submission of the parties, as the argument shows, derived the fact that the ground in dispute is composed

of the rear ends of two adjoining lots fronting on South Queen street in the city of Lancaster, both of which—however the fact may now be—originally extended back about 245 feet to a public alley in the rear. But for this fact, judicially imported into the case, disclosing as it does the location of the disputed ground with reference to that admittedly within the specific devise, no correct understanding of the real dispute would have been possible. For all that appears in the pleadings the one may have been miles away from the other, as was the case in Brendlinger v. Brendlinger, supra, a circumstance which there proved to be a controlling consideration. We take the case as it is thus presented, and it remains only to be determined from the will itself, whether the disputed ground falls within or without the description of the lots devised to the appellee and her cotenant. The lots are separately devised, one in the main body of the will, and one in the codicil. The first devise is as follows: "I give devise and bequeath my home, being my dwelling house, and lot of land attached thereto, to my sister, Mary E. Metzger, together with all the contents thereof, during her lifetime, as a home for herself and my niece, Clara Rogers, and after the death of my sister, Mary, if my niece, Clara Rogers, survive both my wife and my sister, Mary, I give, devise and bequeath the said premises to her and her heirs absolutely with its entire contents." The devise in the codicil reads thus: "I give, devise and bequeath to my sister, Mary E. Metzger, and my niece, Clara Rogers, and their heirs in fee the dwelling house and lot of land No. 135 South Queen street, now occupied by my nephew, John Metzger, and the land attached thereto, after the death of my wife." With respect to the first, it is only necessary to remark that the will itself furnishes not merely an intelligible and sufficient description whereby the thing devised may be identified with reasonable certainty, but the description is so definite that without some extrinsic evidence to show that lot No. 133, when the will became operative, was not of the dimensions it had been when the testator acquired it—as that another lot had been carved from it and given another and distinct designation by number or otherwise —it is impossible to fit the description in the will upon anything

else than the entire lot as it was when testator acquired it.
The description of the lot devised in the codicil, while it is by
number as in the case of the former lot, does not stop with such
designation, but indicates the lot as the lot "now occupied by
my nephew, John Metzger, and the land attached thereto."
If by the words "land attached thereto" is meant land attached
to the original lot No. 135, then clearly the reference is to land
not involved in the present controversy; if the reference is to a
part of lot No. 135, which because of its appropriation and
separate uses by the testator in his lifetime, was not when the
will became operative in the occupancy of the nephew, then the
words employed, if not strictly necessary to an inclusion of
such part of the lot in the devise, at least made the inclusion
more definite and certain. In the one case they are of no
significance in the present contention; in the other, the only
meaning to be given then makes against appellant's contention.
Again—if in point of fact the nephew, John Metzger, was not
in the occupancy of the entire lot No. 135, at the date of the
will, such fact, if shown, would be entitled to consideration in
any effort to fit the testamentary description to the thing de-
vised. But here again we are utterly without evidence as to
the situation and surroundings at that time. We are only per-
mitted to know what the will tells us, viz., that lot No. 135,
occupied by the nephew, John Metzger, was devised to ap-
pellee and her cotenant. It is a well-settled rule that where a
devise contains a plain and certain description of the thing
devised, and this is followed by a reference to occupancy as an
added description, such reference is to be regarded as a de-
fective description if it indicates less than what is embraced
in the prior plain certain description. The rule is thus stated by
Mr. Jarman in his treatise on Wills, vol. 2, page 390: "Where
the description is made up of more than one part and one part
is true, but the other false, if the part which is true describes
the subject with sufficient legal certainty, the untrue part will
be rejected." We are permitted to know exactly what lot
No. 135 contained when the testator acquired it, and are with-
out anything, either in the will or extrinsic to it, to show that it
was ever reduced in size. The description by number is plain

and certain as a testamentary description. Confining the inquiry to the will itself, and interpreting it in its own light, it is impossible to reach any other conclusion than that the devise to the appellee and her cotenant covered lots Nos. 133 and 135 in their original entirety, extending from South Queen street to the public alley in the rear, thus embracing the ground in controversy. This disposes of the only two questions raised by the assignments of error.

Upon the argument it was strongly urged upon us that the question with respect to the appellant's ownership of the ground under the devise, was res adjudicata. Indeed, appellant's main reliance was on this position; and undue confidence in its sufficiency may in part explain the failure to support their contention by parol evidence which was within their reach. But unfortunately for appellant there is nothing in this record, whether pleadings, evidence, exception or assignments, which brings to our attention any adjudication with respect to the subject of this controversy other than that appealed from. In the argument we are referred to an appeal from the orphans' court of Lancaster county adjudicated in the Superior Court, in the case of Smith v. Metzger, 32 Pa. Superior Ct. 596, which it is claimed is conclusive of the controversy. While the question of res adjudicata is not properly before us, and while the case referred to is therefore not for present consideration, we have so far yielded to the earnestness with which appellant's contention is pressed as to give the case referred to full consideration. Unappealed from, it is conclusive as to what was involved in the case; but that was nothing more than the particular fund which was before an auditor for distribution. However much the question of title may have been considered by the court in determining the ownership of the fund for distribution—rents from the disputed ground—the decision settled nothing as to the title itself. We express no opinion as to the correctness of the court's reasoning and conclusions upon the question of title in that case. All we decide is that there is nothing in that case to conclude the appellee in this.

The order of the court is affirmed; the appeal is dismissed at the costs of the appellants.