## Berks County Tuberculosis Society Appeal.

Argued January 7, 1965. Before BELL, C. J., MUS-MANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

*H. Ober Hess*, with him *Benjamin R. Neilson, Mark C. McQuillen*, and *Ballard, Spahr, Andrews & Ingersoll*, for appellant.

*Harold J. Ryan*, with him *Samuel B. Russell*, for appellee.

OPINION BY MR. JUSTICE ROBERTS, April 20, 1965:

This case arises out of a dispute between Berks County Tuberculosis Society, appellant, and Reading-Berks Tuberculosis and Health Association,[1] appellee, each of which claims that it is the income beneficiary under a provision of an inter vivos trust known as "The Musser-Custer Memorial Fund."[2] The trust instru-

---

[1] Appellee adopted its present name in 1952. In 1943, when the trust instrument was executed, and in 1943, 1950 and 1951, when it was amended, appellee's name was Reading Tuberculosis Association.

[2] The trust provided for the accumulation of income and its addition to principal during the lives of the two settlors and the husband of one of them. All three have died and the annual income is now distributable. The issue was raised upon the filing of the ac-

ment, dated April 29, 1943,[3] contained provisions for the distribution of certain income from the corpus of the trust in designated percentages to fifteen charitable organizations. Each party here claims that it is the beneficiary under the paragraph which gives "Six per cent (6%) thereof to The Tuberculosis Society of Berks County, of Reading, Pennsylvania."

The court below concluded: "There is no organization in existence which meets the exact measure or name as used by the Settlors of the trust. There is a latent ambiguity in the instrument as to whom the Settlors intended to receive 6 per cent of the income from the trust." Finding that there was a latent ambiguity, the court received evidence of settlors' intent to assist it in determining the identity of the beneficiary. After making findings of fact and conclusions of law, the court held that the intended beneficiary was Reading-Berks Tuberculosis and Health Association. Following the filing of exceptions and absolute confirmation of the decree nisi, Berks County Tuberculosis Society filed this appeal.

The decree of the court below must be reversed. Although appellant's correct name is "Berks County Tuberculosis Society" and not "Tuberculosis Society of Berks County", it is possible to determine the identity of the beneficiary with certainty from the language of the trust instrument without resort to extrinsic evidence of the settlors' intent. We have stated repeatedly that extrinsic evidence is not admissible to prove in-

---

count and presentation of a petition for adjudication by the surviving trustee, Girard Trust Corn Exchange Bank. At the audit, the trustee advised the court of the respective claims of the Society and the Association.

[3] Although the trust instrument was amended in 1943, 1950 and 1951, none of those amendments affects the beneficiary designation now in question except the 1951 amendment, which merely restates the contested name.

tent when the beneficiary designation in the instrument specifies a recipient with sufficient exactitude to clearly indicate a person or organization legally qualified to take. E.g., *Houston Estate,* 414 Pa. 579, 201 A. 2d 592 (1964); *Beisgen Estate,* 387 Pa. 425, 128 A. 2d 52 (1956); *Logan v. Wiley,* 357 Pa. 547, 55 A. 2d 366 (1947); *Wusthoff v. Dracourt,* 3 Watts 240 (Pa. 1834).[4] Although the settlor may actually have intended to benefit some other recipient, evidence of that fact is inadmissible if the designation in the trust instrument identifies with clarity another recipient.[5] It is not required that the designation conform in every minute detail to the name of a person or organization. This is particularly so when a corporate or organizational name is involved. *Lockwood's Estate,* 344 Pa. 293, 25 A. 2d 168 (1942). It is only necessary that the designation unambiguously identify a subject to which the terms of the trust are obviously applicable.

Admission of evidence to show the intent of the settlor is the exception and not the rule for the sound reason that the writing itself must be considered to be the best and controlling evidence of the settlor's intent. See *Sowers Estate,* 383 Pa. 566, 119 A. 2d 60 (1956).

The trust instrument here specifies the beneficiary as "The Tuberculosis Society of Berks County, of Reading, Pennsylvania." At the time the trust was created both appellant and appellee were functioning organiza-

---

[4] Although we rely upon cases which concern the proper interpretation of wills, the principles enunciated in those cases apply with equal validity in this situation to the interpretation of the trust instrument. *Pew Trust,* 411 Pa. 96, 106-07, 191 A. 2d 399, 405 (1963); see *Erny Trust,* 415 Pa. 8, 202 A. 2d 30 (1964).

[5] Evidence of extrinsic facts and circumstances is admissible to show that an ambiguity exists, *Herr Estate,* 400 Pa. 90, 161 A. 2d 32 (1960); *Metzger's Estate,* 222 Pa. 276, 71 Atl. 96 (1908), but we find appellee's evidence unpersuasive in that regard.

tions. As we have already noted, appellee's name was Reading Tuberculosis Association at all times relevant to the execution of the instruments in litigation. Appellant's name was, and still is, Berks County Tuberculosis Society. We conclude that the trust instrument identifies appellant with clarity as the object of the settlors' bounty.

Although appellee bases part of its argument for finding an ambiguity on the fact that appellant's name, "Berks County Tuberculosis Society", does not precisely coincide with the full designation in the trust instrument of "The Tuberculosis Society of Berks County, of Reading, Pennsylvania," much of the difference between those two appellations is readily explained by an examination of the trust instrument itself. In the section of the instrument in which settlors dispose of income from the trust corpus there are fifteen designated beneficiaries, all of whose names are preceded by "The". It is obvious that this was a stylistic characteristic of the scrivener which assumes no importance in identifying the beneficiary.

A reading of the instrument also amply demonstrates that the phrase "of Reading, Pennsylvania" following the beneficiary's name was not intended to be part of the name but was added merely to provide geographical identification. This conclusion is compelled by the fact that, of the fifteen beneficiaries indicated in the pertinent section, a geographical identification is annexed to thirteen of the named beneficiaries and the phrase "of Reading, Pennsylvania" is annexed to twelve of those.[6]

The question narrows, therefore, to whether "Tuberculosis Society of Berks County" identifies with suf-

---

[6] The two beneficiaries not identified geographically were the Salvation Army and the Trustees of the University of Pennsylvania. With regard to the former, it was directed that the money so received should be used in its work in Reading, Pennsylvania.

ficient certainty "Berks County Tuberculosis Society". In our view, neither the inversion of "Berks County" and "Tuberculosis Society" nor the facts and circumstances relied upon by appellee are sufficient to create an ambiguity in the beneficiary designation which would warrant the introduction of parol evidence to show the settlors' intent.

Decree reversed; distribution to be made in accordance with this opinion. Each party to pay own costs.

---

DISSENTING OPINION BY MR. JUSTICE COHEN:

The settlor purported to make a gift to "The Tuberculosis Society of Berks County, of Reading, Pennsylvania." Two parties claim to be the object of the settlor's charitable intention: Berks County Tuberculosis Society, on the one hand, and Reading-Berks Tuberculosis and Health Association, on the other. While the settlor's words are clear on their face, the external facts make these words ambiguous. That is, upon application of the settlor's words to external facts, it is found that they fit two objects equally but neither exactly. Thus, what is called a "latent ambiguity" arises. *Logan v. Wiley,* 357 Pa. 547, 55 A. 2d 366 (1947); *Metzger's Estate,* 222 Pa. 276, 71 Atl. 96 (1908); 9 Wigmore on Evidence §2472 (3d ed. 1940). Here, it is the description of the beneficiary that gives rise to the latent ambiguity.

It has long been the rule that "[a]n ambiguity in description may always be explained." *Logan v. Wiley,* supra, at p. 551. How it is to be explained is clearly stated by *Metzger's Estate,* supra, at p. 281: "A latent ambiguity can only be developed by extrinsic and collateral circumstances and it is always competent to show that such ambiguity exists. . . . 'When such latent ambiguity has once been made dehors the will, then the way is open for parol testimony to whatever extent may be necessary to remove it'. . . ."

Following this principle, the lower court accepted extrinsic evidence to clear up the ambiguity. The majority, however, would make the acceptance of such evidence ground for reversal. If I understand the majority, they state that no ambiguity exists which would require the admission of extrinsic evidence. Yet there is sufficient ambiguity in the majority's mind to warrant a mechanical and surgical dissection and recomposition of the settlor's words based upon argumentative and speculative assertions deduced from other phrases of the instrument. I do not understand the law to distinguish between a latent ambiguity which allows the admission of relevant extrinsic evidence and one which allows only the rewriting process engaged in by the majority. Once the latent ambiguity is established, it has been thought that the settlor's intent will be more readily fulfilled if all the surrounding facts and circumstances are developed. Undoubtedly, it is proper to search the instrument itself for the meaning of ambiguous words, but, in my view, the majority lapses back into the days before Lord COKE when "[i]t was part of the stiff formalism of earlier interpretation . . . that *all* aids to the meaning must be found *in the document itself.*" (Emphasis partially supplied). 9 Wigmore on Evidence §2470 (3d ed. 1940). As Wigmore points out "[e]ven in COKE's time it was conceded that in case of an equivocation . . . or double-meaning description, outside data could be sought. . . ." Id.

The settlor's intent in this case can only be derived with the aid of extrinsic evidence. I would affirm the lower court and, therefore, I dissent.