Kay Estate.

44

Argued September 24, 1973. Before JONES, C. J., EAGEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

*William M. Robinson*, with him *Reed, Smith, Shaw & McClay*, for appellant.

*Foster S. Goldman, Jr.*, with him *Ben Paul Brasley* and *Berkman, Ruslander, Pohl, Lieber & Engel*, for appellee.

OPINION BY MR. JUSTICE EAGEN, March 25, 1974:

Ethel Kay, age 75 years, and a resident of Pittsburgh, Pennsylvania, died testate on April 24, 1971. Her will dated March 19, 1965,[1] after making specific bequests, leaves the remainder of her estate to the Pittsburgh National Bank to be held by it as trustee of a charitable trust to be known as "The Ethel Kay and Ida Wasser Memorial Trust." Paragraph four of the will directs the trust shall continue for twenty years from the date of its inception and that the net income shall be distributed in varying degrees to fourteen charitable organizations, all in the Pittsburgh area. At the end of the twenty years, the trust is to be terminated and the principal, together with any accumulated income, is to be distributed to the designated charities in their specified portions.

The will described one of the designated charitable beneficiaries in this manner: "Pennsylvania Home for the Blind, Pittsburgh, Pennsylvania."

After investigation, the executor determined the foregoing description did not exactly identify any charitable organization for the blind located in the Pittsburgh area. Accordingly, the executor notified each of the following organizations of the time and place of the audit of the estate: Western Pennsylvania School for Blind Children, Bayard Street at Bellefield, Pittsburgh, Pennsylvania; Pittsburgh Branch, Pennsylvania Association for the Blind, Incorporated, 308 Craig Street, Pittsburgh, Pennsylvania; and, The Greater Pittsburgh Guild for the Blind, 311 Station Street, Bridgeville, Pennsylvania.

These three organizations were represented at the audit in the Court of Common Pleas of Allegheny County, Orphans' Court Division, and each claimed

---

[1] A codicil to the will dated December 1, 1965, in no way effects the outcome of the issue here involved and need not concern us.

to be the intended beneficiary. The court conducted a hearing giving witnesses for each claimant the opportunity to be heard. Each organization convincingly demonstrated its charitable and excellent service on behalf of the blind. Subsequently, the auditing judge entered a decree awarding the bequest to the Pittsburgh Branch, Pennsylvania Association for the Blind, Incorporated (hereinafter referred to as the Pennsylvania Association). One of the losing claimants, the Western Pennsylvania School for Blind Children (hereinafter referred to as the School) filed exceptions to this decree, which were later overruled by a court en banc. The School then filed this appeal.[2]

Initially, we note the court below correctly permitted extrinsic evidence in an effort to determine the identity of the intended beneficiary of the decedent's largess. Generally, the intended beneficiary of a will should, if possible, be determined from the language of the instrument alone. *Berks County Tuberculosis Society Appeal,* 418 Pa. 112, 208 A. 2d 857 (1965). However, where an ambiguity exists in the will itself as to the identity of an intended beneficiary, extrinsic evidence may properly be received to aid the court in establishing the beneficiary's correct identity: *Black Estate,* 398 Pa. 390, 158 A. 2d 133 (1960). This is just such a case.

Certainly, neither of the claimants involved in this appeal are described "with sufficient exactitude to clearly indicate a person or organization legally qualified to take." See *Berks County Tuberculosis Society Appeal,* supra, at 115, 208 A. 2d at 858. The lower court incorrectly held that the testatrix's will was unambiguous and that "the Pennsylvania Association comes *closest* to the designation used by the testatrix. To reach our conclusion, we need *only* change the word 'Home' to 'Association'". [Emphasis supplied.]

---

[2] The Greater Pittsburgh Guild for the Blind did not appeal.

First, as already indicated, the proper test in determining whether a will is unambiguous is: is it of such similarity as to identify the beneficiary with "sufficient exactitude to *clearly* indicate a person or organization legally qualified to take." [Emphasis supplied.] *Berks County Tuberculosis Society Appeal,* 418 Pa. 112, 115, 208 A. 2d 857, 858 (1965). It is obvious that the lower court applied an improper standard; it merely determined that the Pennsylvania Association came *"closest"* to the name used by the testatrix, not that it *"clearly"* indicated the proper beneficiary.

Second, the lower court was incorrect in stating that only one change is necessary to equate the "named" beneficiary with the Pennsylvania Association. The identifying words "Pittsburgh, Pennsylvania" appear after the names of seven of the fourteen named charitable beneficiaries in the testatrix's will. Of the remaining seven named charitable organizations in the will, two of them contain the word "Pittsburgh" in their title, one (Bickur Cholim Jewish Home For The Aged) located in Pittsburgh is the only such named organization in Pennsylvania, and the remaining four are all nation-wide organizations. Thus, it is evident that the placing of the words "Pittsburgh, Pennsylvania" after the names of many of the charitable organizations was merely the scrivener's style to identify the beneficiary as being located in Pittsburgh. Cf. *Berks County Tuberculosis Society Appeal,* supra. Therefore, the question we are faced with is, whether it can be unambiguously determined if the charitable gift bequeathed to the "Pennsylvania Home for the Blind" was left to the "Western Pennsylvania School for Blind Children" or to the "Pittsburgh Branch, Pennsylvania Association for the Blind, Incorporated." Although, the Pennsylvania Association is clearly closer in title to the name used by the testatrix, it is not of such similarity as to identify the beneficiary with "suf-

ficient exactitude to clearly indicate a person or organization. . . ."

In addition, it has long been held in Pennsylvania that a "latent ambiguity can . . . be developed by extrinsic and collateral circumstances and it is always competent to show that such ambiguity exists." *Metzger's Estate*, 222 Pa. 276, 281, 71 A. 96, 97-98 (1908).[3] The testatrix's "named" beneficiary presents just such a latent ambiguity.

The School introduced evidence showing that it has become known to the public as the "Home" for the blind. To buttress this argument, it contends: "The words used by Testatrix describe three characteristics of her intended beneficiary. First, not only is the term 'Pennsylvania' used in the forepart of the name of the beneficiary, but it is specifically stated that the address is Pittsburgh, Pennsylvania. Both claimants qualify in this respect. Second, it is an organization '. . . for the blind'. Again, both claimants provide services for the blind. Third, and it is submitted most important, Testatrix has characterized a particular function provided by her intended beneficiary. It is a 'Home' for the blind." The School, which educates and trains the visually handicapped, does provide board and lodging for about 95% of its two hundred students; and, hence, may be considered a "Home." While, the Pennsylvania Association, although encompassing a wide range of programs for the visually disabled, does not provide any housing for its clients. Thus, it cannot be considered a "Home." Therefore, we are faced with the problem of whether the testatrix was referring to the School

---

[3] See *Berks County Tuberculosis Society Appeal*, supra, and *Wachstetter Will*, 420 Pa. 219, 216 A. 2d 66 (1966). Also see *In re Bletsch's Estate*, 25 Wis. 2d 40, 130 N.W. 2d 275 (1964), which states that a bequest to a non-existent beneficiary gives rise to a latent ambiguity.

—by its often used misnomer. To resolve this ambiguity a court must turn to extrinsic evidence.

Hence, since there is an ambiguity in the will concerning the identity of an intended beneficiary, it was proper for the lower court to have admitted extrinsic evidence to aid the court in establishing the beneficiary's correct identity. *Black Estate*, 398 Pa. 390, 158 A. 2d 133 (1960).

Admittedly, there is no organization in Pittsburgh (or in Pennsylvania) known as the "Pennsylvania Home for the Blind," and it is obvious the intended beneficiary was given an erroneous name by the testatrix. Moreover, the record is persuasive that neither claimant involved in this appeal truly and adequately fits the description, "Pennsylvania Home for the Blind."

The School, although it provides lodging for many of its students, is not the legal residence of the students and, very significantly, its services are limited to children. And, there is nothing in decedent's will indicating she sought to aid children only. Furthermore, there is evidence in the record that in a previous will dated January 14, 1958,[4] testatrix also created a charitable bequest for the benefit of various charitable organizations, including the "Western Pennsylvania School for Blind Children, of Pittsburgh, Pennsylvania," and thus apparently knew how to identify the School correctly. This being so, if the testatrix intended the School to be the beneficiary in the 1965 will, why wasn't the designee more carefully described?

Hence, neither the will nor the extrinsic evidence convincingly supports the claims of either the Pennsylvania Association or the School that it was the intended beneficiary; although, the extrinsic evidence does lucidly demonstrate that there is an ambiguity in the

---

[4] The 1958 and 1965 wills were prepared by different attorneys.

will. Under the circumstances, the application of the doctrine of cy pres is warranted and proper.[5]  See *Black Estate,* supra, and *Women's Homoeopathic Hospital of Philadelphia Case,* 393 Pa. 313, 142 A. 2d 292 (1958).  *Black Estate,* a closely analogous case involved a holographic codicil, which provided in part: "Balance—to go to Board of Christian Education First Presbyterian Church—N.Y."  No such organization existed and both "The First Presbyterian Church in the City of New York, founded 1716, Old First, University Place and Madison Square Foundations" [also known as The First Presbyterian Church of New York] and "The Board of Christian Education of the Presbyterian Church in the United States of America" claimed to be the beneficiary.  This Court in awarding the bequest by the doctrine of cy pres to the Board of Christian Education reversed the lower court's decision as an abuse of discretion.[6]  Thus, demonstrating that the doctrine of cy pres is applicable in cases of this sort.

Furthermore, the cy pres statute specifically states that if a charitable purpose becomes *"indefinite"* the

---

[5] Cy Pres is expressly covered in Pennsylvania by statute—the Act of April 24, 1947, P. L. 100, §10, 20 P.S. §301.10, which states: "Except as otherwise provided by the conveyor, if the charitable purpose for which an interest shall be conveyed shall be or become indefinite or impossible or impractical of fulfillment, or if it shall not have been carried out for want of a trustee or because of the failure of a trustee to designate such purpose, the court may, on application of the trustee or of any interested person or of the Attorney General of the Commonwealth, after proof of notice to the Attorney General of the Commonwealth when he is not the petitioner, order an administration or distribution of the estate for a charitable purpose in a manner as nearly as possible to fulfill the intention of the conveyor, whether his charitable intent be general or specific."

[6] See *Woods, Wills and Administration,* 22 Pitts. L. Rev. 297, 302-03 (1960). Also see *In re Wolf's Estate,* 162 N.Y.S. 2d 645 (1957), and *In re Bletsch's Estate,* supra.

doctrine of cy pres is applicable. *Indefinite* is defined as "(h)aving no definite or clear meaning or purpose; *vague* or general; not *precise* or *certain,* as indefinite emotions; *an indefinite language,* plan."[7] (Emphasis supplied.) Surely, if any meaning is to be given to the statutory word "indefinite", which we must,[8] this case is the proper decision to bring into effect its application. Since, the testatrix's "named" beneficiary is too "indefinite" to either be ascertainable from the will itself or from the extrinsic evidence, application of the doctrine of cy pres is proper. Not only is it proper, but it would be error if we did not apply the doctrine. *Black Estate,* supra, and *Women's Homoeopathic Hospital of Philadelphia Case,* supra.

The lower court correctly concluded the doctrine of cy pres should be applied, but then awarded the gift in its entirety to the Pennsylvania Association. To justify its selection of the Pennsylvania Association over the other claimants, it cited the following reasons: (1) The testatrix was of the Jewish faith and the Pennsylvania Association "is probably an object of charity among persons of the Jewish religion in this community, even though it is now nonsectarian"; (2) The title given the beneficiary in the will included the word "Pennsylvania", thus indicating the testatrix intended a state-wide organization; (3) "[T]he Pennsylvania Association comes closest to the designation used by the testatrix. To reach our conclusion, we need only change the word 'Home' to 'Association' "; (4) The testatrix intended an organization located in Pittsburgh and the Pennsylvania Association is so located.

---

[7] Webster's New International Dictionary, Second Edition Unabridged, copyright 1959.

[8] It has long been held in this Commonwealth that every word of a statute is to be construed according to its common and everyday meaning. *Treaster v. Union Township,* 430 Pa. 223, 242 A. 2d 252 (1968).

The fact that the Pennsylvania Association is located in Pittsburgh does not, of itself, justify awarding the gift in its entirety to the Pennsylvania Association since the School, the other claimant here involved, is also located in Pittsburgh. Additionally, it appears that reasons (1), (2) and (3) given by the court to justify its selection of the Pennsylvania Association are not supported by the record.

The lower court's conclusion that the testatrix intended to favor an organization founded by those of the Jewish faith is pure speculation. There are fourteen charitable organizations named as beneficiaries of the trust and only five are Jewish related. There is no evidence in the record that the testatrix ever had any affiliation of any kind with the Pennsylvania Association. Moreover, the will itself manifests she was a woman of broad charitable intent desiring to aid the sick and the handicapped generally.

Next, the Pennsylvania Association is not a state-wide organization, nor is it supervised or controlled by a state-wide organization.

In addition, a comparison of the title given the beneficiary, "Pennsylvania Home for the Blind, Pittsburgh, Pennsylvania" with that of the legal title of the Pennsylvania Association, "Pittsburgh Branch, Pennsylvania Association for the Blind, Incorporated," as already indicated, readily discloses that a change in more than one word is needed to achieve sameness.

In view of the foregoing, we rule the lower court abused its discretion in awarding the gift to the Pennsylvania Association exclusively. The application of the doctrine of cy pres should effectuate the intent of the testator as nearly as humanly possible. See *Women's Homoeopathic Hospital of Philadelphia Case*, supra. The intent of the testator is the fundamental guiding principle. See *Henry Estate*, 413 Pa. 478, 198 A. 2d 585 (1964) ; *Jull Estate*, 370 Pa. 434, 88 A. 2d 753

(1952); and *Ziegler Estate*, 356 Pa. 93, 51 A. 2d 608 (1947).

Both organizations here involved render the type of service the testatrix intended to help. Either may well have been the intended beneficiary, but the true beneficiary is impossible to ascertain. If the School were the intended beneficiary, awarding the gift of the Pennsylvania Association exclusively, would result in a harsh injustice.

We recognize that in applying the doctrine of cy pres, courts in the attempt to effectuate the testator's intent, ordinarily select only one eleemosynary institution whose services approximate that intended by the donor. Both the Pennsylvania Association and the School render services which approximate the intent of the testatrix herein. Selecting one over the other is a tossup. This, we would not do.

In *Women's Homoeopathic Hospital of Philadelphia Case,* supra, this Court ruled that in applying the doctrine of cy pres, a court, under certain circumstances, may properly divide the proceeds of a trust. The power to do so was also recognized in *Black Estate,* supra. The circumstances herein justify and warrant such action.

The decree is reversed, and the record is remanded with directions to enter a decree dictated by this opinion.

Costs to be paid from that portion of the trust here involved.

Mr. Justice O'BRIEN took no part in the consideration or decision of this case.

Mr. Justice MANDERINO dissents.

CONCURRING OPINION BY MR. JUSTICE POMEROY:

While I join in the opinion of the Court, I deem it appropriate to add the following observations as to why

I consider that the court below was correct in considering extrinsic evidence, and why I think that the doctrine of *cy pres* is applicable in this situation, although with a different result from that reached by the Orphans' Court Division.

This case clearly falls within the rule that extrinsic evidence is admissible to resolve a latent ambiguity in the terms of a will. See, e.g., *Shand's Estate,* 275 Pa. 77, 118 A. 623 (1922); *Gilmer v. Stone,* 120 U.S. 586, 30 L. Ed. 734 (1887). While it is true that in *Berks County Tuberculosis Society Appeal,* 418 Pa. 112, 208 A. 2d 857 (1965), we held that parol evidence was improperly admitted on the issue of the identity of an intended beneficiary, that case is distinguishable on its facts. There, we found that a gift of income from a charitable trust to "The Tuberculosis Society of Berks County, of Reading, Pennsylvania" was sufficient on its face to identify the Berks County Tuberculosis Society as the intended beneficiary. Here, on the other hand, we are faced with more than just a transposition of words in the title of the cestui que trust. The gift here in question was made to a *Home* for the blind; neither party before us is denominated as a "home".

The doctrine of *cy pres* is applicable here, in my view, only because the extrinsic evidence adduced before the court below is insufficient to resolve a latent ambiguity as to the identity of the intended beneficiary. While the doctrine has been given a broad application in this Commonwealth by the Act of April 24, 1947,[1] a court can invoke its powers under this statute only "if the charitable purpose for which an interest shall

---

[1] P.L. 100, §10, 20 P.S. §301.10. See footnote 5 of the opinion of the Court, *supra,* for the text of this section, which supplanted five earlier, conflicting statutes on the *cy pres* principle, and which has in turn been reenacted as part of the Probate, Estates and Fiduciaries Code, 20 Pa. S. §6110, effective July 1, 1972.

be conveyed shall be or become indefinite or impossible or impractical of fulfillment". Thus, where extrinsic evidence is sufficient to reveal the donor's intent, the "charitable purpose" is not in fact "indefinite", and the doctrine of *cy pres* has no application; the meaning of the instrument of conveyance has been determined, and a decree should be rendered accordingly.

If, however, the extrinsic evidence does not tip the scales in favor of one or another potential beneficiary, the conveyor's charitable purpose as set forth in the instrument of gift remains obscure and "indefinite". The Court today holds, and I agree, that the evidence in the case at bar was of this inconclusive character, and that it is impossible to state with any assurance that either of the claimants now before the Court was intended to receive the bequest in question to the exclusion of the other. In such a situation of equal balance, the power of a court to divide the gift between the claimants cannot be doubted.[2] While there is apparently no Pennsylvania case directly in point, I believe the law was correctly stated in *Eagleson Estate*, 13 Fid. Rep. 454, 460-461 (O.C. Wash. County 1963) : "[I]t is entirely consistent with the *cy pres* principle to divide a fund between two deserving claimants if *neither* is shown by sufficiently credible and trustworthy evidence to be the intended beneficiary. . . ." This accords with the views of a recognized text writer on the subject, and I know of no holding to the contrary. See 1 T. Jarman, Treatise on Wills (Sanger revision), 216, 225, 233 (7th

---

[2] The groundwork for an application of *cy pres* was properly laid in the court below. The executor made an investigation to determine what organizations were performing services for the blind in the relevant community. These were given appropriate notice, were represented at the audit hearing, and gave testimony. See Excerpts from Transcript of Official Notes of Testimony, July 5, 1972, Record 13a ff.

56 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

ed. 1930).[3] See also *In re Alchin's Trusts*, L.R. 14 Eq. 230 (1872); *Bennet v. Hayter*, 2 Beav. 81 (1839).

---

[3] "It sometimes happens that a [charitable] legacy is given to a particular institution by a description equally applicable to more than one. It cannot here be presumed that the testator did not intend to select one in particular, for he may have known, and, considering the terms of the bequest, probably did know, only one answering the description; yet, as it cannot be ascertained which, the particular purpose fails; nevertheless, it is clear that the legacy will be applied *cy pres*, or divided between the two institutions." *Op. cit.* at 232-233 (footnote omitted).

---

DISSENTING OPINION BY MR. JUSTICE ROBERTS:

As I see it, the majority ignores the holding and approach of the one case exactly on point, *Berks County Tuberculosis Society Appeal*, 418 Pa. 112, 208 A.2d 857 (1965),[1] and proceeds apace to apply cy pres in a manner in which it was never intended to be used. I would affirm the decree of the orphans' court on the basis of its construction, with the help of extrinsic evidence, of testatrix' will. I dissent.

Here, testatrix directed by her will that a single eleemosynary institution serving the blind receive a charitable bequest. The Western Pennsylvania School for Blind Children, as appellant, argues to this Court that testatrix intended that it receive the bequest. Similarly, appellee Pennsylvania Association for the Blind urges us to decide that the orphans' court correctly found that it was testatrix' intended beneficiary. A third claimant in the orphans' court, the Greater Pittsburgh Guild for the Blind, did not appeal. Each, aware of settled appellate court practice, expected either to win or to lose, to receive the bequest or not to receive it. But, mirabile dictu, a majority of this Court applies cy pres, transforms the single bequest into two, and awards it equally to appellant and appellee (forgetting

---

[1] See note 3 infra.

for the sake of convenience the Greater Pittsburgh Guild?).

The majority can cite no case which *holds* that an appellate court on its own motion may willynilly split in two a charitable bequest, where the testatrix specifically directed that her monies be distributed to a single beneficiary. *Black Estate,* 398 Pa. 390, 158 A.2d 133 (1960), and *Women's Homoeopathic Hospital of Philadelphia Case,* 393 Pa. 313, 142 A.2d 292 (1958), furnish the grist for the majority's mill. Neither supports its conclusions.[2]

In *Women's Homoeopathic,* this Court affirmed the award by the orphans' court of two funds released upon the dissolution of the Women's Homoeopathic Hospital. The orphans' court made its determination by applying cy pres. The first, or so-called Sellers, fund was in this Court's view "self-determinative of its ap-

_____

[2] In his concurring opinion, Mr. Justice POMEROY correctly recognizes that neither *Black Estate,* 398 Pa. 390, 158 A.2d 133 (1960), nor *Women's Homoepathic Hospital of Philadelphia Case,* 393 Pa. 313, 142 A.2d 292 (1958), is authority for the majority's position. Since there exists "no Pennsylvania case directly in point," Mr. Justice POMEROY's reliance on *Eagleson Estate,* 43 Washington County Rptr. 199, 206 (Pa. O.C. 1963) [13 Fid. Rptr. 454, 460-61], is somewhat puzzling. The portion of that opinion quoted in the concurring opinion follows an extended discussion of *Black Estate,* and when read in context, merely restates the dictum there. More fundamentally, the orphans' court in *Eagleson Estate* held that the bequest was to be awarded to a single beneficiary, and reached its conclusion by construing the will, not applying cy pres.

"It is concluded that there is no necessity to invoke the doctrine of *cy pres* in the instant proceeding; that the will presents a typical problem of misnomer of a corporation; that the ambiguity in the will has been resolved by adequate, positive parol evidence; that many reported cases disclose a misnomer more variant from the correct corporate style than in the subject case." 43 Washington County Rptr. at 207 [13 Fid. Rptr. at 462]. It is clear that *Eagleson Estate* supports the view that the instant case presents a "typical problem of misnomer."

propriate disposition." 393 Pa. at 318, 142 A.2d at 295. This conclusion resulted from the testator's desire to benefit women's hospitals. The use of the plural "hospitals" justified the orphans' court's dividing the fund equally between the two hospitals serving women and "still functioning substantially in the same manner as they were when the trustee made its testamentarily authorized selection in 1938." Id.

The second fund to which cy pres was applied was composed of bequests from many different testators. It was the master's finding that these donors intended "(1) to aid a hospital commonly known as a 'women's hospital', or (2) to aid a hospital commonly recognized as a 'homoeopathic hospital', or (3) both." Id. at 319, 142 A.2d at 295. The master also found that there was no hospital performing both functions. In view of the master's finding of the testator's intent, the orphans' court divided the funds in question between a "homoeopathic" and a "women's" hospital. Because this result was dictated by the intent of the testators, this Court affirmed.

The instant facts are plainly distinguishable. Here, the testatrix' general charitable intent is singular, to aid the blind. And she wanted her bequest to go to a single institution.

A gratuitous remark in *Black Estate,* supra, apparently prompts the majority to cite that case as support for its notion that an appellate court may act as initial factfinder and apply cy pres. In *Black Estate,* this Court said: "We believe that the testatrix intended to bequeath and devise her residuary estate to the Board of Christian Education of the Presbyterian Church in the United States of America and that it was a clear abuse of discretion to award such estate to a 'Committee which had no authority to take property or to administer it' unless specifically authorized by 'The First Presbyterian Church in the City of New York, founded

1716, Old First, University Place and Madison Square Foundations'." Id. at 395, 158 A.2d at 135. Although this Court mentioned cy pres in its opinion, its holding is more consistent with an affirmance on the basis of a construction of the will.

To justify its position the majority focuses on this single sentence from *Black Estate*. "The auditor and the lower court might have awarded the balance to either of the Church claimants or half to each of them." Id. at 392-93, 158 A.2d at 134. By its own terms this statement contradicts the majority's view that an appellate court may act as factfinder, apply cy pres, and award a bequest equally to two claimants. The idea plainly expressed is that it is within the discretion of "[t]he auditor and the lower Court," not this Court, to divide a bequest, in the appropriate case, equally between two claimants.

Moreover, in *Black Estate*, the ultimate resolution was that a single beneficiary was awarded the bequest. Any opinion expressed about the possibility of the orphans' court dividing the bequest between two beneficiaries was clearly dictum. *Black Estate*, therefore, provides no support for the majority's position.

Even conceding *arguendo* the applicability of cy pres to the instant facts, the majority pursues an unprecedented appellate course. The determination of testatrix' intent on the basis of extrinsic evidence is a finding of fact, and must be done by the orphans' court. If the majority believes the orphans' court erred in applying cy pres, then it should remand the case to that court with instructions to apply the correct principles of law. The orphans' court, as factfinder, must resolve initially the factual issues that the majority believes were decided on the basis of mistaken legal principles. However, today's majority, in this case as in no other, plays court of first instance, finds the facts at the appellate level, and dictates its result to the orphans'

court. This, in my view, is improper and contrary to all our prior practice and decisions.

Furthermore, by what principle does the majority decide to divide testatrix' bequest equally? The record indicates nothing about the relative importance or significance of these two institutions serving the blind. Does each serve the same number of persons in a year? Does one provide more extensive service or maintain greater facilities? Has one a more substantial endowment? These are the sort of inquiries that the Commonwealth, under its *parens patriae* power, would consider relevant. See *Pruner Estate,* 390 Pa. 529, 136 A.2d 107 (1957) ; Pa. O.C.R. § 5, rule 5. However, an appellate court bound by the record, and here confined by a record developed for other purposes (neither party asked that the bequest be divided) is just incapable of acting as factfinder. Moreover, this Court has consistently resolved not to invade the province of the orphans' court's factfinding function.

And what about the third claimant in the orphans' court? This Court apparently acts as factfinder in deciding to divide testatrix' single bequest between appellant and appellee. But by not considering the claim of the Greater Pittsburgh Guild for the Blind on the ground it did not appeal, this Court seemingly resumes its role as appellate court. Being an appellate court for one claimant and a factfinder for the other two manifestly demonstrates the unsoundness of the majority's approach.

It is a strange result indeed that starts with a will in which testatrix specifically directed that a single charity receive a single bequest and finishes with an appellate court on an incomplete record ostensibly giving effect to this clear intent by awarding her bequest to two institutions.

In my view, the correct approach is to ascertain testatrix' intent, as this Court did in *Berks County Tuber-*

*culosis Society Appeal,* 418 Pa. 112, 208 A.2d 857 (1965),[3] by construing the will. After all, the question is which institution did testatrix intend. Questions of identity are precisely the sort of problems an orphans' court constantly resolves with reference to the will, and in the proper case, with the aid of extrinsic evidence. The argument that the answer to this question of testatrix' intent does not come easily is unimpressive. It is the rare case involving the construction of a will that is not difficult.

In the present case, the orphans' court, with the aid of extrinsic evidence, construed testatrix' will. After hearing extensive and conflicting evidence, the court assessed the credibility of witnesses, and found that testatrix intended her bequest to go to the Pennsylvania Association for the Blind. This finding of fact, approved by the court en banc, has the force of a jury verdict. "[I]t is not within our province to assess the credibility of the testimony." *Zeedick Will,* 421 Pa. 44, 46, 218 A.2d 755, 755 (1966) (per curiam). Rather,

---

[3] *Berks County Tuberculosis Society Appeal,* 418 Pa. 112, 208 A.2d 857 (1965), involved "a dispute between Berks County Tuberculosis Society . . . and Reading-Berks Tuberculosis and Health Association, . . . each of which claim[ed] it [was] the income beneficiary under a provision of an inter vivos trust . . . ." Id. at 113, 208 A.2d at 858 (footnote omitted). The orphans' court allowed the introduction of extrinsic evidence, and on the basis of that evidence ascertained settlor's intent. We reversed because "it [was] possible to determine the identity of the beneficiary with certainty from the language of the trust instrument without resort to extrinsic evidence of the settlor's intent." Id. at 114, 208 A.2d at 858.

The approach taken by both the orphans' court and this Court in *Berks County Tuberculosis Society Appeal* was to construe the will. Nothing said there by this Court precludes the introduction of extrinsic evidence in the appropriate case. Id. at 114-15, 208 A.2d at 858-59. Here, the will was ambiguous and therefore the introduction of extrinsic evidence was proper. Nevertheless, with or without extrinsic evidence, the correct approach to use in ascertaining testatrix' intent is to construe the will, not apply cy pres.

our review on appeal is limited to determining whether the findings of fact are supported by sufficient evidence and whether there has been an abuse of discretion or error of law. *Shewchuk Estate,* 444 Pa. 249, 260, 282 A.2d 307, 313 (1971); *Mintz Trust,* 444 Pa. 189, 196, 282 A.2d 295, 299 (1971); *Gramm Estate,* 437 Pa. 381, 386, 263 A.2d 445, 447 (1970); *Abrams Will,* 419 Pa. 92, 101, 213 A.2d 638, 643 (1965); *Pusey's Estate,* 321 Pa. 248, 260, 184 A. 844, 849 (1936). In my judgment, the record discloses no support for a conclusion that the orphans' court, when construing the will with the help of extrinsic evidence, either abused its discretion or applied an incorrect legal principle.

Whether this Court would arrive at a different conclusion, were it sitting as factfinder, is irrelevant. The question we must answer is whether the findings of fact are supported by sufficient evidence. In my view, they are. Accordingly, I would affirm the decree of the Orphans' Court of Allegheny County on the basis of its construction, with the aid of extrinsic evidence, of testatrix' will.